COMMERCIAL LEASING, INC.
*vs.*
ERNEST H. JOHNSON, STATE TAX ASSESSOR

Cumberland.   Opinion, February 7, 1964.

SITTING: WILLIAMSON, C. J., WEBBER, TAPLEY, SULLIVAN, SIDDALL, JJ. DUBORD, J., sat at argument, but retired before rendition of decision.

*Robert F. Preti,* for Appellant.

*Ralph W. Farris,*
*John W. Benoit, Asst. Attys. Gen.,* for Appellee.

SIDDALL, J.   On report.   Commercial Leasing, Inc., hereinafter called the Appellant, is a Maine corporation, organized in 1950, engaged in the business of leasing automotive equipment.   It has an office in Portland where certain records are kept, and employs two persons in this state, its president and its treasurer.   During the audit period from January 1, 1955, through November 30, 1960, it was duly qualified and authorized as a foreign corporation to do business in New Hampshire.   During that period it purchased tractors and trailers without the State of Maine, which were delivered direct to the Appellant in New Hampshire.   The Appellant also purchased certain parts and materials from various suppliers, a portion from Merrill Transport Company and other Maine companies and the remainder from suppliers outside the borders of the State of Maine.   Paul E. Merrill of Portland, Maine, owns and operates as a sole

proprietorship Merrill Transport Company, and is engaged in the business of hauling petroleum products. He is also the president of the appellant corporation and owner of all its capital stock. The Appellant and Merrill Transport Company have places of business at the same address in Portland.

The State Tax Assessor, hereinafter called the Appellee, assessed a use tax with interest and penalties on these tractors, trailers, parts, and materials in the sum of $21,634.14.

The issues in this case are summarized as follows:

1.  Do the provisions of the Use Tax Statute authorize the assessment of a Use Tax on the tractors and trailers or on the parts and materials purchased by the Appellant, upon the facts disclosed in this case?

2.  If the answer is in the affirmative in either instance, does the assessment violate the due process or commerce clauses of the 14th Amendment to the Constitution of the United States?

The pertinent statutory provisions are as follows:

"A tax is imposed on the storage, use or other consumption in this State of tangible personal property, purchased at retail sale on and after July 1, 1957, at the rate of 3% of the sales price. Every person so storing, using or otherwise consuming is liable for the tax until he has paid the same or has taken a receipt from his seller, thereto duly authorized by the assessor, showing that the seller has collected the sales or use tax, in which case the seller shall be liable for it."

R. S., 1954, Chap. 17, Sec. 4, as amended.

It is noted that prior to July 1, 1957, the tax rate was 2% of the sales price of the taxable article.

R. S., Chap. 17, Sec. 2 definitions:

" 'In this state' or 'in the state' means within the exterior limits of the state of Maine and includes

all territory within these limits owned by or ceded to the United States of America."

" 'Storage' or 'use' does not include keeping or retention or the exercise of power over tangible personal property brought into this state for the purpose of subsequently transporting it outside the state."

" 'Use' includes the exercise in this state of any right or power over tangible personal property incident to its ownership when purchased by the user at retail sale."

We discuss first the tax assessed on the tractors and trailers. These tractors and trailers were purchased outside of this state for delivery to the plaintiff in New Hampshire. Five of the trailers were registered in the State of Maine after delivery in New Hampshire. These trailers were leased to Merrill Transport Company and were used in hauling jet fuel between points in New Hampshire and Brunswick, Maine, for a period of about three weeks, and were then leased to C. H. Sprague and Son Co., hereafter called Sprague, a Massachusetts corporation dealing in industrial coal and fuel oil and having a place of business in New Hampshire. In view of the decision reached it is unnecessary to consider the effect of this lease and registration upon the taxability of these vehicles. The remaining vehicles, after having been received in New Hampshire, were immediately leased by the Appellant to Sprague. A separate lease of each vehicle was prepared by the Appellant, executed by it, apparently in the State of Maine, and forwarded to Massachusetts to be signed by Sprague. One copy of the lease was retained at Appellant's Portland office, one copy was retained in Sprague's office, and one copy was placed with the equipment.

Under the terms of the leases the Appellant-lessor was obligated to maintain the vehicles and have them available for service seven days a week. Appellant was responsible

for normal wear and tear repairs.  About 90% of the repairs were made by the Appellant in New Hampshire, and about 10% were made in the State of Maine by the Appellant through Merrill Transport Company.  There was also evidence from the President of Merrill Transport Company, indicating that the Appellant was obliged to furnish fuel for the vehicles, a portion of which was furnished by Merrill Transport Company in the State of Maine and billed to the Appellant.  The president also testified that it was the obligation of the Appellant to have service available for the equipment regardless of whether it was in Maine, New Hampshire, Vermont, or elsewhere.  Appellee claims that these acts performed in this state in fulfillment of the Appellant's obligation under the terms of the leases constitute a taxable use of the property in this state.

On this issue the case appears to be one of novel impression.  No case in which the facts are the same or similar has been called to our attention.

In *Trimount Co.* v. *Johnson,* 152 Me. 109, a nonresident lessor leased a certain coin-operated machine to a resident lessee.  It was stipulated that the lessor had done nothing with respect to the leased property within the State of Maine either before or since the making of the lease.  Our court concluded that the petitioner had not exercised in this state any right or power over the property within the statutory definition of "use."

In *South Shoe Machine Co., Inc.* v. *Johnson,* 159 Me. 74, 76, a nonresident corporation leased shoe machinery to resident lessees to be used by them in their business in this state.  In denying the right to assess a use tax on the machines the court said:

> "The mere *existence* of certain rights or powers in the owner-lessor reserved by the lease would not suffice to subject him to taxation if he failed to or refrained from *exercising* any such right or power in Maine."

In *Automatic Canteen Company of America* v. *Johnson*, 159 Me. 189, the plaintiff was a nonresident lessor of personal property leased to and used in this state by a Maine lessee. The majority opinion held that certain acts of employees of the lessor performed in the State of Maine constituted an exercise of power over the leased property incidental to ownership, and held the use tax to be lawfully assessed.

California has been less liberal to the taxpayer than our decisions allow. The case of *Union Oil Co. of California* v. *State Board of Equalization,* reported in 368 P. (2nd) 496 involved an extra-state sale and lease-back of certain property. The court held that when the leased personal property physically entered the State of California the owner (lessor) exerted a right of ownership through the instrumentality of the lease and thereby used the property in that state, and that the taxing authority at the location (California) where the owner exercises such ownership may properly find that such use constitutes a taxable use.

The Appellant argues that the instant case is not distinguishable from *Hambro, Inc.* v. *Johnson,* reported in 158 Me. 180. In that case this court decided that the mere receipt of rentals in Maine, under a lease executed in New Hampshire of personal property never physically present in the state, did not constitute the exercise of a right or power in this state over the tangible property itself within the definition of the word "use." In the instant case leased vehicles were, from time to time, physically present within this jurisdiction to be repaired by the Appellant-lessor through Merrill Transport Company. The record shows that some seventeen thousand dollars' worth of parts were purchased from Merrill Transport Company by the Appellant and put on vehicles, presumably the vehicles taxed, by Merrill Transport Company. It is noted that a sales tax was paid on these items and was not included in the assess-

ment. This information serves to emphasize what is obvious from the entire record that the repairs made in this jurisdiction were extensive transactions. We are satisfied that the Appellant as owner-lessor of the vehicles, responsible for such repairs, in choosing to have them made in this jurisdiction, exercised within the territorial limits of this state a right or power incident to the ownership of property. The burden of proving that a transaction is not taxable is upon the person charged with tax liability. R. S., 1954, Chap. 17, Sec. 9. The record contains no evidence indicating that repairs were not made in this state upon any vehicle upon which the use tax was assessed. We therefore conclude that the tax upon all of the vehicles was properly assessed, subject to a consideration of the constitutional questions raised by the Appellant.

We now discuss the question of the taxability of the parts. The evidence shows that some of them were purchased from Merrill Transport Company and other Maine dealers, and the remainder from suppliers outside of the State of Maine. The Appellee claims that the parts purchased from Maine dealers were sales in the State of Maine, and the payment of a sales tax thereon not having been shown by the Appellant a use tax was payable by the purchaser under the provisions of R. S., 1954, Chap. 17, Sec. 4. On the other hand the Appellant claims that title to these parts passed in New Hampshire, and they were not subject to a use tax in this state.

Our Uniform Sales Act contains the following provisions: R. S., 1954, Chap. 185, Sec. 18.

"I. Where there is a contract to sell specific or ascertained goods, the property in them is transferred to the buyer at such time as the parties to the contract intend it to be transferred.

II. For the purpose of ascertaining the intention of the parties, regard shall be had to the terms of

the contract, the conduct of the parties, usages of trade and the circumstances of the case."

**Sec. 19.** "Unless a different intention appears, the following are rules for ascertaining the intention of the parties as to the time at which the property in the goods is to pass to the buyer:

**Rule 5.** If the contract to sell requires the seller to deliver the goods to the buyer, or at a particular place, or to pay the freight or cost of transportation to the buyer, or to a particular place, the property does not pass until the goods have been delivered to the buyer or reached the place agreed upon."

"The question whether a sale has been completed and title to the property involved has passed depends on the intention of the parties at the time the contract was made. * * * * Where such intent is not expressed, as in the instant case, it must be discovered from the surrounding circumstances and from the conduct and the declarations of the parties. Under the terms of the Uniform Sales Act, which is in force in Pennsylvania as well as in Maine, certain rules are laid down for ascertaining such intention."

*Wallworth* v. *Cummings,* 135 Me. 267, 269.

We first discuss the use tax assessed on the parts purchased from Merrill Transport Company. The Appellee does not challenge the corporate entity of the Appellant. He does claim, however, that the transaction between Merrill Transport Company and the Appellant should be carefully scrutinized. The Appellant concedes that the burden is on it to show that it factually does not come within the purview of the Use Tax Statute. Upon the record in this case where did title to these parts pass?

Appellant's president testified that it employed two mechanics in New Hampshire at the time of the audit, and also had the partial services of a third person, David Bell, who was a Sprague employee who handled some detail work

for the Appellant.  The nature of the detail work was not disclosed, but David Bell testified that he was employed by Sprague and that he had authority to order parts on behalf of the Appellant for the repair and maintenance of vehicles in New Hampshire.  On direct examination he was asked the question, "Have you had occasion to order parts on behalf of Commercial Leasing, Inc. to be delivered in Newington, New Hampshire?"  He answered, "I have."  He was interrogated in regard to his dealings with Merrill Transport, and it appears that he received from a mechanic a list of parts needed in the repair of Appellant's vehicles, and after approving the list he sent it along to the purchasing agent for Merrill Transport Company.  On occasions the transaction was made by telephone.  The parts were delivered to the Appellant in New Hampshire by vehicles of Merrill Transport Company.  Glenn S. Libby, an employee of Merrill Transport Company, who handled the orders received from Mr. Bell, testified that the orders were processed in his employer's stock room and then loaded on his employer's truck and delivered in New Hampshire.  The truck was driven by an employee of Merrill Transport Company with instructions to go to Newington, N. H., unload the parts and return.  He also testified that no orders for parts to be delivered in New Hampshire came from Portland.

The testimony of these witnesses clearly indicates that these parts were ordered from New Hampshire by mail or telephone; and that they were actually delivered at Appellant's place of business in New Hampshire by means of seller's vehicle operated by his employee.  David Bell testified that he had authority to order parts for use in the repair and maintenance of the vehicles in New Hampshire.  His authority in this respect could come only from the Appellant.  The record contains no refutation of his testimony in this regard.  Applying the pertinent rules for ascertaining the intention of the parties to the facts in this case we

are satisfied upon the record that the parties intended that title to the parts was not to pass until they were delivered in New Hampshire. Under these circumstances a sales tax against the seller was not authorized because the property was purchased in this state without the payment of a sales tax has no application.

The testimony with reference to the parts purchased from Maine companies other than Merrill Transport Company is far from clear. It is our interpretation of this testimony that the parts were ordered through Maine companies and that they came by carrier from outside of Maine and New Hampshire. Under these circumstances there could be no use tax assessed against the Appellant for these parts. The same conclusion is reached in regard to the parts purchased from sellers outside the State of Maine and delivered in New Hampshire. These parts were never physically present in this jurisdiction in their original state. They were present here after having replaced some part of a vehicle upon which we have concluded a use tax may be assessed. We have already determined, subject to constitutional questions, that the owner of leased vehicles, responsible for repairs thereon, in choosing to have such repairs made in this jurisdiction exercised within this state a right or power incident to the ownership of property. We do not extend that principle to apply to parts used in the repair of such vehicles outside of this jurisdiction.

The Appellant argues that the imposition of the use tax violates the provisions of the commerce clause and was a denial of due process because the tax was on tangible personal property which was located outside the borders of this state.

In *Hunnewell Trucking, Inc.* v. *Johnson*, 157 Me. 338, a use tax was imposed on personal property owned by the taxpayer. In that case the taxpayer purchased outside the State of Maine and brought into this state certain materials

and supplies for use upon its motor trucks in its business in interstate commerce. These materials and supplies were placed in the taxpayer's terminal in Maine for the exclusive purpose of being affixed to the motor trucks and used in the normal course of taxpayer's business. Our court there held that there was a break in the interstate transit purely for the convenience or business profit of the taxpayer, and that the immunity from taxation by the commerce clause of the United States Constitution had been lost.

The court quoted from 171 A. L. R. 284, the general rule in cases where immunity from the imposition of taxes is lost by reason of a break in transit, as follows:

"It is universally agreed that personal property actually in transit in interstate commerce is protected by the commerce clause of the Federal Constitution from local taxation in the states through which it passes. Where, however, the interstate transit is broken or interrupted in a particular state, the question arises whether the property may thereupon be subjected to local taxation therein. In this situation the principle has been adopted by the Supreme Court of the United States and adhered to by the lower Federal courts and the courts of the various states that if the break in the interstate journey was caused by the exigencies or conveniences of the chosen means of transportation, considerations of the safety of the goods during transit, or natural causes over which the taxpayer has no control, the continuity of the transit remains unimpaired, and the immunity of the goods from state or local taxation is consequently unaffected; but if the interruption in the journey occurred for purposes connected with the business convenience or profit of the taxpayer, or the owner of the property, then the continuity of the transit must be regarded as having been so disturbed as to destroy the immunity of the property from local taxation."

In substantiation of its position the court cited the following cases: *Henneford, et al.* v. *Silas Mason Co., Inc., et*

*al.,* 300 U. S. 577; *Nashville, Chattanooga St. Louis Railway* v. *Wallace,* 288 U. S. 249; *Southern Pacific Company* v. *Gallagher,* 306 U. S. 167, and *Pacific Telephone and Telegraph Co.* v. *Gallagher,* 306 U. S. 182.

In the instant case the leased trucks and trailers came to rest in this state for the convenience or business profit of the Appellant, i.e., for the purpose of having repairs made by the lessor-owner in accordance with its obligations under the terms of the leases. They thereby ceased to be a part of interstate commerce and became subject to the assessment of a use tax.

The Appellant calls our attention to the case of *Greenough* v. *Tax Assessors of City of Newport,* 331 U. S. 486. In that case the court was concerned with the right of the state to levy a personal property tax on intangible personal property. The difference between the taxation of tangible and intangible personal property was discussed, and the court stated that the mere power over a resident does not permit a state to exact from him a property tax on his tangible property *permanently* located outside the jurisdiction of the taxing state.

The instant case differs from *Greenough* in that the tax assessed was for the privilege of using property in this state.

> "In so far as use taxes are imposed with respect to an attribute of property ownership exercised within the state, they are not open to the objection that they deny due process of law by reason of extra-territorial operation, even as applied to the use of supplies by a foreign corporation upon their appropriation within the state by the corporation's general office to the use of the whole intrastate, interstate, and foreign railroad system maintained by it, . . . ."
> 47 Am. Jur., Sales and Use Taxes, Sec. 48.

"The tax is not upon the operations of interstate commerce, but upon the privilege of use after commerce is at an end.

Things acquired or transported in interstate commerce may be subjected to a property tax, non-discriminatory in its operation, when they have become part of the common mass or property within the state of destination. * * * This is so, indeed, though they are still in the original packages. * * * For like reasons they may be subjected, when once they are at rest, to a non-discriminatory tax upon use or enjoyment. * * *

The privilege of use is only one attribute, among many, of the bundle of privileges that make up property of ownership. * * * A state is at liberty, if it pleases, to tax them all collectively, or to separate the faggots and lay the charge distributively."

*Henneford* v. *Silas Mason Co., supra.*

We therefore find that the use tax assessed on the tractors and trailers was not in violation of the commerce or due process clause of the Fourteenth Amendment to the Federal Constitution.

Appellee is entitled to judgment for the tax assessed on the tractors and trailers with interest and penalties thereon. The tax on the parts must be abated.

The tax assessment sets forth a total tax of $18,453.07, interest in the sum of $3,111.07, and penalties in the amount of $70.00. No breakdown is made of the various items making up the tax, interest, and penalties. Other evidence in the case fails to give us sufficient information to determine the amount of the judgment. The case is therefore remanded to the Superior Court to determine the amount of taxes, interest, and penalties assessed on the trailers and tractors and to enter judgment for the Appellee for the amount found due.

The entry will be

> *Tax abated in part. Case remanded to the Superior Court to determine the amount of taxes, interest, and penalties assessed on the tractors and trailers and to enter judgment thereon in accordance with this opinion.*