## Northeastern Pharmaceutical and Chemical Company, Inc. *v.* Gerald J. Heffernan, Tax Commissioner of the State of Connecticut

Cotter, C. J., Loiselle, Bogdanski, Peters and Healey, Js.

Argued October 9—decision released December 25, 1979

*Milton Turkel,* for the appellant (plaintiff).

*Ralph G. Murphy,* assistant attorney general, with whom, on the brief, was *Carl R. Ajello,* attorney general, for the appellee (defendant).

Loiselle, J.   The plaintiff appealed the defendant's assessment of a tax deficiency for fiscal year

October 1, 1972 to September 30, 1973, to the Superior Court.[1] The court denied relief and the plaintiff appealed.

Neither the facts nor the commissioner's assessment of the tax due, provided he prevails on the law, are disputed by the parties. The sole issue on appeal is whether the plaintiff corporation maintained "a permanent or continuous place of business without the state, other than its statutory office"[2] during the fiscal year ending September 30, 1973, hereinafter referred to as fiscal 1973. If it did, then it may not be permitted to deduct losses incurred there from its gross income in computing its net income subject to tax in Connecticut. If it had no such place of business outside the state, but instead conducted its business wholly within the state during fiscal 1973, then it may be entitled to deduct the losses incurred in that other state in computing its net income subject to tax in Connecticut.

The trial court heard no evidence. The parties stipulated to the facts and the trial court ordered

---

[1] The plaintiff's appeal was filed under General Statutes § 12-237.

[2] General Statutes § 12-218, on September 30, 1973, provided in part: "ALLOCATION OR APPORTIONMENT OF NET INCOME. ALLOCATION OF CERTAIN NET GAINS AND LOSSES. If a taxpayer does not maintain a permanent or continuous place of business without the state, other than its statutory office, its entire net income shall be subject to tax in this state. If the taxpayer maintains a permanent or continuous place of business without the state, the business tax shall be imposed on a base which reasonably represents the proportion of the trade or business carried on within the state."

This statute was amended by Public Acts 1973, No. 73-350 §§ 9, 27. The amendments, however, are irrelevant to the issues discussed herein for two reasons. First, § 27 of Public Acts 1973, No. 73-350 provided that the amendments applied to fiscal years which began on or after January 1, 1973. Second, the amended portions of the statute do not include those portions relied on by the parties in this case.

that their stipulation be included in the record. "It is axiomatic that, in litigation, the parties may waive their right to offer evidence and may stipulate to the facts." *Houston* v. *Highway Commissioner,* 152 Conn. 557, 558, 210 A.2d 176 (1965).

It is uncontroverted that during fiscal 1973, Northeastern maintained a place of business in Connecticut. The corporation filed two tax returns for that year in Connecticut. In its original tax return, Northeastern computed its net income as a multistate corporation which is permitted to allocate taxes owed between Connecticut and other states based on the proportion of business carried on within Connecticut. One of the statutory limitations on the manner in which a multistate corporation may allocate its tax burden among two or more states concerns the allocations of "net gains or losses from sales, scrappage, abandonment, book write-offs or rentals of tangible assets held, owned or used in connection with the trade or business of the taxpayer but not for sale or rent in the regular course of business." Section 12-218 (2) provides in part that these net gains and losses "shall be allocated to the state [of Connecticut] if the property . . . is situated in the state at the time of the sale, scrappage, abandonment or write-off or during the rental thereof, otherwise such net gains or losses shall be allocated outside the state."

In its amended tax return, Northeastern claimed that its net income for the fiscal year was entirely attributable to Connecticut. Northeastern deducted losses on the transfer of its machinery and equipment in Missouri. This it claimed it was entitled to do under General Statutes §§ 12-213 and 12-217

of the Corporate Business Tax Act, which define "net income" as it is used in § 12-218 and list deductions which may be taken from a corporation's gross income to compute net income.[3] The act permits a corporation, in computing its net income for state tax purposes, to deduct from its gross income almost all items which are deductible in the computation of net income for federal tax purposes. There are a few exceptions to this general rule but none of them is relevant here. Under the Internal Revenue Code § 165,[4] Northeastern's loss was deductible for federal tax purposes. The corporation made this claim of law in an effort to persuade the court that its loss was deductible in computing its tax owed to Connecticut, but the trial court rejected it.

---

[3] On September 30, 1973, § 12-213 defined net income as follows: "net earnings received during the income year and available for contributors of capital, whether they are creditors or stockholders, computed by subtracting from gross income the deductions allowed by the terms of section 12-217 . . . ."

Section 12-217 provided: "In arriving at net income as defined in section 12-213, whether or not the taxpayer is taxable under the federal corporation net income tax, there shall be deducted from gross income all items deductible under the federal corporation net income tax law effective and in force on the last day of the income year, except (1) federal taxes on income or profits, losses of other calendar or fiscal years, . . . interest received from federal, state and local government securities, if any such deductions are allowed by the federal government, and (2) interest paid during the income year . . . ."

[4] I.R.C. § 165 provides in relevant part: "LOSSES (a) General rule.–There shall be allowed as a deduction any loss sustained during the taxable year and not compensated for by insurance or otherwise. (b) Amount of deduction.–For purposes of subsection (a), the basis for determining the amount of the deduction for any loss shall be the adjusted basis provided in section 1011 for determining the loss from the sale or other disposition of property."

This statute, as it existed when the plaintiff filed its tax return for fiscal 1973, was last amended on August 29; 1972, by Pub. L. No. 92-418 § 2, 86 Stat. 656, 657.

The plaintiff assigns as error the trial court's conclusions that Northeastern failed to sustain its burden of proof that it had no permanent or continuous place of business outside the state of Connecticut during the 1973 fiscal year; that the losses suffered by Northeastern on transfer of its machinery and equipment located in Missouri should be allocated to Missouri and were not deductible in computing its net income subject to tax in Connecticut; and that the assessment levied against Northeastern by the commissioner for additional tax due was proper. Northeastern claims that these conclusions are not supported by the facts set forth in the stipulations and included in the finding by the trial court.

The finding states that the parties' stipulation of facts is to be included in the record on appeal and printed.[5] The finding then states, in three short paragraphs, that the plaintiff's original return apportioned its net income as a multistate corporation, but its amended return attributed its entire net income, including its deductible losses on the transfer of its machinery and equipment in the state of Missouri, to Connecticut. In effect, all the finding consists of is an order that the stipulation be made part of the record on appeal and printed, a brief summary of the facts, and the court's conclusions.

---

[5] The parties filed their first stipulation of facts with the trial court on June 27, 1977. This stipulation includes a brief review of the plaintiff's corporate history from its incorporation in 1966 to its filing of the original and amended tax returns for the 1973 fiscal year. The parties filed a supplemental stipulation on December 28, 1977. There they stipulated that the president of Northeastern would testify, in essence, that the corporation did no business in Missouri during the fiscal year in question. The trial court ordered both the original and the supplemental stipulation to be included in the record. In this appeal we treat them as one stipulation.

It appears from the trial court's conclusions that it doubted the truth of some of the facts asserted in the stipulation. The trial court found that the plaintiff failed to sustain its burden of proof that it had maintained no permanent or continuous place of business outside the state of Connecticut during fiscal 1973. "The allegations and stipulation together constitute a judicial admission of the facts stated. . . . [which] should ordinarily be adopted by a trial court in the decision of a case. . . . It is not, however, necessarily binding upon the court, and under the circumstances of a particular case the court may be justified in disregarding it. . . . This follows from the fact . . . that a judge is not a mere umpire in a forensic encounter but a minister of justice." *Peiter* v. *Degenring,* 136 Conn. 331, 337–38, 71 A.2d 87 (1949). Considering the paucity of facts in the finding, it can only be concluded that the court's order to print the stipulations in the record was intended to include them in the finding to permit this court to determine whether the trial court's conclusions, which were based on the stipulations, were in error.

Briefly stated, the stipulation recites that beginning in 1966 Northeastern had executive offices in Connecticut and a plant in Missouri. In December, 1971, Northeastern dismissed all of its production employees and ceased all operations in its Missouri plant, except winding up its affairs which required further negotiations concerning payments due on the machinery and rent for which Northeastern was in default. This abrupt action was necessitated by the United States Food and Drug Administration's issuance of regulations in December, 1971, which severely restricted the use of hexachlorophene, Northeastern's only product. One of Northeastern's

officers remained at the Missouri plant until March, 1972, to supervise wind-up activities, and a part-time custodial employee remained thereafter until November 17, 1972, when Northeastern resolved the disputed provisions of the lease with the landlord and transferred title to the machinery and equipment to its creditor.

In its brief, Northeastern contends that it had no permanent or continuous place of business in Missouri during fiscal 1973, which ran from October 1, 1972, to September 30, 1973. Yet the trial court found, and the corporation concedes, that the losses it recognized were incurred on the transfer of machinery and equipment located in Missouri on November 17, 1972. Northeastern claims that the mere presence of property within a state does not subject the owner to corporation business taxes.

In *Colonial Pipeline Co.* v. *Traigle,* 421 U.S. 100, 95 S. Ct. 1538, 44 L. Ed. 2d 1 (1975), the United States Supreme Court upheld Louisiana's tax on "the privilege of carrying on or doing business" in the state as applied to the plaintiff Delaware corporation whose only activity in Louisiana was its ownership and maintenance of a 258-mile pipeline which ran through the state. The corporation maintained no administrative offices or personnel in Louisiana. It did no intrastate business in Louisiana. Colonial Pipeline Company's only activity in Louisiana consisted of a work force of 25 to 30 mechanics, electricians and other workers who inspected and maintained the pipes to keep liquified petroleum products flowing through a 3400-mile pipeline from Houston, Texas to New York City. *Colonial Pipeline Co.* v. *Traigle,* supra, 109–110. The court said that the privileges, powers, protec-

tion and benefits which accrued to the corporation by virtue of its qualification to do business in Louisiana enhanced the value of its activities there and, to some extent, justified the imposition of the tax. Id., 111–14. In *Olympia Brewing Co.* v. *Department of Revenue,* 266 Or. 309, 310, 511 P.2d 837 (1973), cert. denied, 415 U.S. 976, 94 S. Ct. 1561, 39 L. Ed. 2d 872 (1974), the Oregon Supreme Court held that the presence of the plaintiff's beer kegs in Oregon for the purpose of dispensing Olympia beer was sufficient to render the plaintiff subject to the Oregon corporation income tax, regardless of whether the plaintiff's other activities constituted the solicitation of business in Oregon.

Therefore, since the state of Missouri could have imposed its annual corporation franchise tax on Northeastern because the corporation kept personal property in Missouri during fiscal 1973; Mo. Ann. Stat. § 147.010.2 (Vernon);[6] those assets could not have been proper subjects of taxation in Connecticut without violation of the commerce clause of the United States constitution.[7]

---

[6] "[Mo. Ann. Stat. (Vernon)] 147.010. ANNUAL FRANCHISE TAX, RATE, MINIMUM—EXCEPTIONS . . . . 2. Every foreign corporation engaged in business in this state whether under a certificate of authority issued under chapter 351, RSMo, or not, shall pay an annual franchise tax to the state of Missouri equal to that levied in subsection 1 of this section on the par value of its outstanding shares and surplus employed in business in this state, or if the outstanding shares of such corporation or any part thereof consist of shares without par value, then, in that event, for the purposes herein contained, such shares shall be considered as having a value of five dollars per share, unless the actual value of such shares should exceed five dollars per share, in which case the tax shall be levied and collected on the actual value and the surplus, and for the purposes in this chapter such corporation shall be deemed to have employed in this state that proportion of its entire outstanding shares and surplus that its property and assets in this state bears to all its property and assets wherever located. . . ."

[7] U.S. Const., art. I § 8.

In *Complete Auto Transit, Inc.* v. *Brady,* 430 U.S. 274, 97 S. Ct. 1076, 51 L. Ed. 2d 326, reh. denied, 430 U.S. 976, 97 S. Ct. 1669, 52 L. Ed. 2d 371 (1977), the court said that state taxes that are applied to activity with a substantial nexus with the state, that are fairly apportioned, that do not discriminate against interstate commerce, and that are fairly related to the services provided by the state, do not violate the commerce clause. This test has been applied by the court to determine the validity of other state taxing systems in two subsequent cases. *Washington Revenue Department* v. *Stevedoring Assn.,* 435 U.S. 734, 750, 98 S. Ct. 1388, 55 L. Ed. 2d 682 (1978); *Japan Line Ltd.* v. *County of Los Angeles,* 441 U.S. 434, 99 S. Ct. 1813, 60 L. Ed. 2d 336 (1979).

In view of the courts' holdings in *Colonial Pipeline Co.,* supra, and *Olympia Brewing Co.,* supra, the trial court could legally have concluded the following. Northeastern's personal property in Missouri has no substantial nexus with Connecticut, but only with Missouri. General Statutes § 12-218 fairly apportioned the corporation's loss on its Missouri property to the state of Missouri and not to Connecticut. The Connecticut corporate business tax act did not discriminate against interstate commerce because § 12-218 allocates both gains and losses from the disposition of out-of-state property to the state where it is located. Since Northeastern offered no evidence to show that Connecticut conferred upon it any privileges, powers, protections or benefits with regard to its Missouri property, the corporation's loss deduction for that property was not fairly related to services provided by this state. Although the trial court did not articulate these grounds for sustaining the commissioner's

deficiency assessment, its decision was not in error. Where the trial court reaches a correct decision but on inadequate grounds, that decision will be sustained if correct grounds exist to support it. *Royce* v. *Freedom of Information Commission,* 177 Conn. 584, 588, 418 A.2d 939 (1979); *Favorite* v. *Miller,* 176 Conn. 310, 317, 407 A.2d 974 (1978).

The plaintiff's second and the only remaining assignment of error concerns the trial court's failure to accept its claims of law. Since these claims asserted the opposite of the court's conclusions discussed above, there is no error for the reasons already stated.

There is no error.

In this opinion the other judges concurred.