## ALTRAY COMPANY, INC. *v.* JOHN G. GROPPO, COMMISSIONER OF REVENUE SERVICES (14468)

PETERS, C. J., CALLAHAN, BORDEN, BERDON and NORCOTT, Js.

Argued October 29, 1992—decision released January 26, 1993

*Kenneth E. Werner,* with whom, on the brief, was *Donald M. Griswold,* for the appellant (plaintiff).

*Jonathon L. Ensign,* assistant attorney general, with whom, on the brief, was *Richard Blumenthal,* attorney general, for the appellee (defendant).

PETERS, C. J. The principal issue in this appeal is whether a New York corporation having its primary place of business in Connecticut has engaged in sufficient activity in New York to satisfy the "conducts business" requirement of General Statutes (Rev. to 1985) § 12-218,[1] thereby qualifying the corporation for an apportionment of its taxable income between Connecticut and New York. The plaintiff, Altray Company, Inc. (taxpayer), sought to amend three previously filed tax returns, upon which it had paid Connecticut corporation income taxes, because it claimed the right to appor-

---

[1] General Statutes (Rev. to 1985) § 12-218 provides in relevant part: "APPORTIONMENT OF NET INCOME. Any taxpayer which is taxable both within and without this state shall apportion its net income as provided in this section. For purposes of apportionment of income under this section, a taxpayer is taxable in another state if in such state such taxpayer conducts business and is subject to a net income tax, a franchise tax for the privilege of doing business, or a corporate stock tax, or if such state has jurisdiction to subject such taxpayer to such a tax, regardless of whether such state does, in fact, impose such a tax."

Section 12-218 also provides a variety of formulae to determine the apportionment percentage for purposes of calculating a taxpayer's net income subject to Connecticut's corporation tax. Only the taxpayer's qualification to apportion its income, and not the application of any of § 12-218's formulae, is at issue in this appeal. Furthermore, the parties agree that, regarding the taxpayer's qualification for apportionment, the issue in this appeal involves only the application of the "conducts business" portion of § 12-218. The parties do not question New York's authority to tax the taxpayer.

tion income to New York. The defendant, the commissioner of revenue services (commissioner), denied the amended returns and the corresponding request for refund of a portion of the taxes previously paid. The taxpayer sought review in the Superior Court of the commissioner's final decision denying the refund request. The trial court dismissed the appeal. The taxpayer appealed from the judgment of the trial court to the Appellate Court, and we transferred the appeal to this court pursuant to Practice Book § 4023 and General Statutes § 51-199 (c). We reverse the judgment of the trial court.

The parties stipulated to the following facts. The taxpayer is a New York corporation with its principal place of business in Greenwich, Connecticut. It is engaged in the import business and primarily acts as an agent facilitating domestic purchases of candies and confectioneries from foreign vendors. In the course of this business, the taxpayer purchases and resells the candies, and arranges to have them shipped from foreign vendors and delivered to subsequent purchasers' warehouses located in states other than Connecticut and New York.

During 1983, 1984 and 1985, the taxpayer augmented the business conducted at its Connecticut office through its president's numerous, repeated and regular meetings with foreign vendors at his residential apartment in New York City. These meetings averaged in number approximately three per month. At these meetings, held in New York for the convenience of visiting overseas suppliers, the taxpayer placed orders with the foreign vendors.

Because of its incorporation in New York, the taxpayer was subject to that state's corporation franchise tax. For the relevant income years it paid the statutory minimum tax due to New York. The taxpayer also

paid taxes to Connecticut for the privilege of carrying on business in this state, pursuant to General Statutes (Rev. to 1985) § 12-214.[2] In its original returns, filed in 1983, 1984 and 1985, the taxpayer paid the Connecticut tax measured by its entire net income. In 1986, however, the taxpayer filed amended returns for the three prior years that apportioned its net income between Connecticut and New York. Pursuant to this apportionment, the taxpayer recalculated its previously paid Connecticut corporation taxes due. Because this recalculation resulted in a claimed reduction of its tax liability, the taxpayer requested a refund of excess taxes paid, with interest.

The commissioner denied the amended returns, determining that the taxpayer "does not conduct business without the State of Connecticut." The taxpayer protested this denial, and requested a hearing before the commissioner so that it could present additional evidence regarding its right to apportion its income between Connecticut and New York. After the hearing, the commissioner issued a final order denying the taxpayer's protest. It concluded that "[t]his company has not established that it conducts business outside of Connecticut . . . . The audit assessment is found to be correct and lawful." The commissioner neither decided nor addressed the merits of the taxpayer's position regarding the amount of the claimed refund or the

---

[2] General Statutes (Rev. to 1985) § 12-214 provides in relevant part: "IMPOSITION OF TAX. Every . . . company carrying on, or having the right to carry on, business in this state . . . shall pay, annually, a tax or excise upon its franchise for the privilege of carrying on or doing business, owning or leasing property within the state in a corporate capacity or as an unincorporated association taxable as a corporation for federal income tax purposes or maintaining an office within the state, such tax to be measured by the entire net income as herein defined received by such corporation or association from business transacted within the state during the income year and to be assessed for each income year at the rate of eleven and one-half per cent."

figures offered to support the refund amount in the event that apportionment should be allowed.

The taxpayer appealed to the Superior Court pursuant to General Statutes (Rev. to 1985) § 12-237,[3] complaining that it was entitled to apportion its income. Specifically, the taxpayer maintained that its activity in New York amounted to conducting business for the purpose of § 12-218. The taxpayer also maintained that, even if its activity was not sufficient to allow apportionment, the commissioner was estopped in this case from denying the claim for a refund. Finally, the taxpayer sought a judgment awarding it the full amount of its requested refund instead of a remand to the commissioner.

The trial court, following a de novo review of the taxpayer's claim, dismissed the appeal. The trial court determined that § 12-218 was a tax exemption statute that should be construed against the taxpayer. The trial court also determined that the proper meaning of the § 12-218 "conducts business" requirement was "carrying on business" as defined in related tax provisions and that, pursuant to that standard, the taxpayer had not conducted business in New York. The trial court dismissed the taxpayer's estoppel argument on the grounds that the commissioner's response was neither binding on the commissioner nor had it been relied upon by the taxpayer.[4]

---

[3] General Statutes (Rev. to 1985) § 12-237 provides in relevant part: "APPEAL. Any taxpayer aggrieved because of any order, decision, determination or disallowance of the commissioner of revenue services under the provisions of this part may, within one month after service upon the taxpayer of notice of such order, decision, determination or disallowance, take an appeal therefrom to the superior court for the judicial district of Hartford-New Britain . . . ."

[4] The basis for the taxpayer's estoppel claim was the commissioner's response to a 1986 letter from the taxpayer that requested advice about the operation of the apportionment rules. In that response, the commissioner indicated that "[i]f the sales are destined outside Connecticut," a

On appeal, the taxpayer challenges the trial court's determination that it did not conduct business in New York during the income years 1983, 1984 and 1985. The taxpayer claims that: (1) the trial court improperly determined that § 12-218 is a tax statute that provides an exemption rather than one that imposes a tax; (2) the trial court improperly interpreted the "conducts business" requirement in § 12-218 in disregard of the commissioner's pretrial discovery statement adopting a standard that would give legal effect to the taxpayer's incorporation in New York; (3) the trial court, under any reasonable construction of the "conducts business" requirement of § 12-218, misapplied that requirement in light of the taxpayer's stipulated New York activities; and (4) if this court sustains its appeal, it has established its entitlement to a refund in the amount requested. Our review of these claims is plenary; see *Morton Buildings, Inc.* v. *Bannon,* 222 Conn. 49, 53, 607 A.2d 424 (1992); and we will reverse the trial court if its conclusions are legally or logically incorrect or find no support in the facts that appear in the record. Id.; *United Illuminating Co.* v. *Groppo,* 220 Conn. 749, 752, 601 A.2d 1005 (1992); *Pandolphe's Auto Parts, Inc.* v. *Manchester,* 181 Conn. 217, 221–22, 435 A.2d 24 (1980). Because we agree with the taxpayer, first, that the apportionment provision is an imposition statute, and, second, that the taxpayer satisfies even the commissioner's standard for "conducts business," the appeal must be sustained.

I

As a preliminary matter, the taxpayer asks us to review the trial court's determination that § 12-218 is

New York corporation with offices in Connecticut might qualify for an apportionment percentage of greater than zero, thus reducing the amount of net income subject to this state's corporation tax. In light of this response, the taxpayer filed the amended returns at issue here. The taxpayer has not pursued this estoppel claim on appeal.

properly considered a tax exemption statute, and not a tax imposition statute. If a statute that imposes a tax is ambiguous either on its face or in its application, a taxpayer is entitled to a construction in its favor; conversely, a statute providing for a tax exemption must be construed in favor of the state. *Morton Buildings, Inc.* v. *Bannon,* supra, 54; *The B. F. Goodrich Co.* v. *Dubno,* 196 Conn. 1, 6, 490 A.2d 991 (1985); *Hartford Electric Light Co.* v. *Sullivan,* 161 Conn. 145, 154, 285 A.2d 352 (1971). We agree with the taxpayer that § 12-218 involves the imposition of a tax, and, therefore, that any ambiguity must be resolved in its favor and against the commissioner.

In *Schlumberger Technology Corporation* v. *Dubno,* 202 Conn. 412, 423, 521 A.2d 569 (1987), which addressed the construction of the apportionment formulae provisions of § 12-218, we resolved ambiguities in the statute in favor of the taxpayer. See also *The B. F. Goodrich Co.* v. *Dubno,* supra. Although our decision did not turn on an explicit determination that § 12-218 was an imposition statute, we now hold that this is the proper characterization and rule of construction to apply in cases involving disputes over any provision of § 12-218.

The apportionment statute, although itself not a taxing statute, provides the criteria and formulae for determining net income subject to the state's corporation tax. Section 12-214, which imposes the corporation tax,[5] provides that the tax is "to be measured by the entire net income . . . from business *transacted within the state* during the income year." (Emphasis added.) Significantly, § 12-214 does not provide any guidance to determine the measure of "business trans-

---

[5] General Statutes § 12-214 is entitled "Imposition of tax." See footnote 2; see generally W. O'Neill, "Connecticut Taxes Affecting Business Entities," 54 Conn. B.J. 496, 499–512 (1980).

acted within the state." Such guidance is found, however, in § 12-218. That section states that a taxpayer is to apply the formula "provided in this section" to calculate net income taxable within this state. Because § 12-218 is an integral component of this state's tax imposition scheme; see also *Texaco Refining & Marketing Co.* v. *Commissioner of Revenue Services,* 202 Conn. 583, 594, 522 A.2d 771 (1987); it cannot properly be characterized as a statute providing a taxpayer exemption.

The commissioner resists this characterization on the ground that apportionment of net income under § 12-218 operates to exclude from taxation a portion of corporate income otherwise subject to § 12-214. Emphasizing that qualification for apportionment is a separate inquiry from application of the various apportioning formulae, the commissioner argues that cases such as *Schlumberger Technology Corporation* v. *Dubno,* supra, do not control the resolution of this appeal because, in those cases, neither the multistate nature of the corporation nor the resulting qualification to apportion income was at issue. Conceding that the application of apportionment formulae is an imposition of taxing authority; id., 423; the commissioner asserts nonetheless that the taxpayer's prerequisite showing that it qualifies for the right to apportion its net income requires the conclusion that § 12-218 operates as an exemption provision for such purposes. In effect, the commissioner asks us to bifurcate the characterization of the apportionment statute. An analysis of whether a corporation qualifies to apportion income would proceed under § 12-218 as a tax exemption statute; an analysis of questions regarding the application of apportionment formulae would proceed as if the statute imposed a tax.

We decline to adopt the commissioner's bifurcated analysis for two reasons. As a statutory matter, the commissioner's argument cannot be reconciled with the

language of § 12-214, which limits the reach of the corporation tax to that income from business "transacted *within* the state." This statutory limitation mirrors the second difficulty with the commissioner's position, which is that it ignores established federal constitutional constraints on state taxation of interstate corporations.

Well established federal law limits the taxing power of a state in accordance with the provisions of the commerce and due process clauses of the federal constitution.[6] See *Complete Auto Transit, Inc.* v. *Brady,* 430 U.S. 274, 279, 97 S. Ct. 1076, 51 L. Ed. 2d 326, reh. denied, 430 U.S. 976, 97 S. Ct. 1669, 52 L. Ed. 2d 371 (1977) (commerce clause); *Mobil Oil Corporation* v. *Commissioner of Taxes of Vermont,* 445 U.S. 425, 436–37, 100 S. Ct. 1223, 63 L. Ed. 2d 510 (1980) (due process clause). Without apportionment, the state's corporation tax would be constitutionally suspect. Cf. *Underwood Typewriter Co.* v. *Chamberlain,* 254 U.S. 113, 41 S. Ct. 45, 65 L. Ed. 165 (1920). Because the state does not have the power to tax that portion of income attributable to activity outside its borders, the apportionment provisions necessarily operate to determine the extent of the state's power to impose a tax. Accordingly, the state cannot assert a right to impose

---

[6] The constitution of the United States, article one, § 8, provides in relevant part: "The Congress shall have Power . . . To regulate Commerce . . . among the Several States . . . ." The commerce clause prohibits state taxation that discriminates against interstate commerce. See *Complete Auto Transit, Inc.* v. *Brady,* 430 U.S. 274, 279, 97 S. Ct. 1076, 51 L. Ed. 2d 326, reh. denied, 430 U.S. 976, 97 S. Ct. 1669, 52 L. Ed. 2d 371 (1977).

The fourteenth amendment to the United States constitution provides in relevant part: "No State . . . shall deprive any person of life, liberty or property, without due process of law." The due process clause prohibits imposition of state taxes unless there is a minimal connection between the activities being taxed and the taxing state. See *Mobil Oil Corporation* v. *Commissioner of Taxes of Vermont,* 445 U.S. 425, 436–37, 100 S. Ct. 1223, 63 L. Ed. 2d 510 (1980).

a tax on a corporation's entire net income, regardless of its origin, and then characterize as an exemption the corporation's claim that the state lacked the authority to tax in the first instance.

We conclude, therefore, that in cases involving the right to apportion income under § 12-218, as in other cases involving the imposition of a tax, the applicable principles of construction favor the taxpayer rather than the commissioner. *Morton Buildings, Inc.* v. *Bannon,* supra. In case of ambiguity in the governing statute, it must be construed in favor of the taxpayer.

## II

Viewing § 12-218 as a statute that imposes a tax, we now turn to the substantive issue of the application of its apportionment requirement to the taxpayer in this case. We must decide how to construe the provision in § 12-218 that "[f]or purposes of apportionment of income under this section, a taxpayer is taxable in another state if in such state such taxpayer conducts business," and then apply the statute to the stipulated facts concerning the taxpayer's commercial conduct in New York.

The phrase "conducts business" is not defined either by statute or by a properly promulgated tax regulation. The commissioner proposes that we construe "conducts business" to be the equivalent of "carrying on business," as that phrase is used in other provisions of the corporation tax statutes and regulations.[7] The taxpayer counters, however, that the commissioner has elsewhere embraced a broader rule encompassing not only "carrying on business," but also "the right to carry on business." The taxpayer relies, for this contention, on the commissioner's answer to a pretrial interrogatory

[7] Chapter 208, entitled "Corporation Business Tax," of the General Statutes, § 12-213 et seq., and the regulations promulgated pursuant thereto; see General Statutes § 12-2; provide for the corporation tax.

that explicitly stated this broader test for the measure of "conducts business." The commissioner responds that the taxpayer has misconstrued its reply to the interrogatory, and continues to advance "carrying on business" as the proper test for "conducts business."[8]

The taxpayer has assigned as a separate claim of error the trial court's alleged failure to give appropriate weight to the commissioner's reply to its interrogatory. We need not address that contention, however, because we conclude that the taxpayer's right to apportionment can be sustained even if we apply the commissioner's construction of "conducts business." Furthermore, an agency's construction of the statutes entrusted to it for enforcement is generally persuasive, even if it is not dispositive. See *Phelps Dodge Copper*

---

[8] The discussion in the trial court regarding the commissioner's actual rule in use took the following form. In response to an interrogatory in which the taxpayer asked for the department of revenue services' rule for interpreting "conducts business," the commissioner stated that "if a company is 'carrying on or [has] the right to carry on business' as those words are used in Conn. Gen. Stat. § 12-214-1 of the Regulations of Connecticut State Agencies, in a state other than Connecticut, then that company 'conducts business' within the meaning of Conn. Gen. Stat. § 12-218." Following the taxpayer's argument to the trial court that, because it has a "right to carry on business" in another state by virtue of its incorporation in New York, it satisfies this interpretation of § 12-218, the commissioner argued that "[w]hile the Commissioner's interrogatory response might have been clearer, it is easy enough to see that his use of the words 'carrying on or [has] the right to carry on business' is drawn from the language of Conn. Gen. Stat. § 12-214 and the title of § 12-214-1 of the Regulations of Connecticut State Agencies. In fact, the 'conducts business' requirement of § 12-218 is coextensive with the 'carrying on' portion of § 12-214 and subsection (a) only of the Regulation, that is the 'carrying on business in this state' part of § 12-214-1." In its memorandum of decision, the trial court determined that "[t]he [commissioner] further maintains that the 'conducts business' requirement of section 12-218 is coextensive with the 'carrying on' business portion of Conn. Dept. Reg. section 12-214-1 (a) only, not section 12-214-1 (b) as the [taxpayer] argues. The court agrees with the [commissioner]. Section 12-214-[1] (b) is inapplicable to this case." The parties have continued this debate in their briefs and oral arguments on appeal.

*Products Co.* v. *Groppo,* 204 Conn. 122, 128–30, 527 A.2d 672 (1987); *Texaco Refining & Marketing Co.* v. *Commissioner of Revenue Services,* supra, 599.

The commissioner's test equating "conducts business" with "carrying on business" refers us to the definition of "carrying on business" that appears in related corporate tax statutes and regulations. General Statutes (Rev. to 1985) § 12-213 defines "carrying on or doing business" as "mean[ing] and includ[ing] each and every act, power or privilege exercised or enjoyed in this state, as an incident to, or by virtue of, the powers and privileges acquired by the nature of any [corporate] organization."[9] This statutory definition is effectively narrowed, according to the commissioner, by the definition of "carrying on business" contained in § 12-214-1 (a) of the Regulations of Connecticut State Agencies. The regulation states that "[a] company is 'carrying on business in this state' if, within this state, it engages in one or more of the following activities, *including but not limited to*: [e.g.] . . . (2) maintaining an office . . . (3) selling tangible personal property (as opposed to soliciting orders therefor) . . . (7) having an employee, wherever based . . . coordinate the delivery of merchandise."[10] (Emphasis added.)

[9] General Statutes (Rev. to 1985) § 12-213 provides in relevant part: "DEFINITIONS. . . . '[C]arrying on or doing business' means and includes each and every act, power or privilege exercised or enjoyed in this state, as an incident to, or by virtue of, the powers and privileges acquired by the nature of any organization whether the form of existence is corporate, associate, joint stock company or fiduciary . . . ."

[10] Section 12-214-1 (a) of the Regulations of Connecticut State Agencies provides: "CARRYING ON, OR HAVING THE RIGHT TO CARRY ON, BUSINESS

"(a) A company is 'carrying on business in this state' if, within this state, it engages in one or more of the following activities, including but not limited to:

"(1) owning or leasing (as lessee) real property;

"(2) maintaining an office, or compensating its employee for the use of his home if such employee works from such home; if its property, including product samples, brochures and advertising materials, and instructions

The taxpayer maintains that its meetings in New York meet the statutory definition of "carrying on business." During the period of years in issue in this case, the taxpayer had a regular practice of using New York, the state in which it was incorporated, for the negotiation and placement of orders from foreign vendors. These activities, the taxpayer insists, represent the essence of its business as an agent dealing in tangible goods and therefore manifest "each and every act, power or privilege exercised . . . as an incident to, or by virtue of" its incorporation in New York.

The commissioner, emphasizing his narrower regulation, maintains that the taxpayer was not "carrying

---

on product usage, is stored in such home; and if the address or telephone number of such home is listed in its advertisements and public announcements;

"(3) selling tangible personal property (as opposed to soliciting orders therefor);

"(4) performing or soliciting orders for services;

"(5) selling or soliciting orders for real property;

"(6) maintaining a stock of inventory in a public warehouse;

"(7) having an employee, wherever based: engage in managerial or research activities; make collections on regular or delinquent accounts; offer technical assistance and training to its customer or user of its product after the sale; repair or replace faulty or damaged goods; install or assemble its product; visit its customer or user of its product to determine customer or user satisfaction; pick up returned merchandise from its customer or user of its product; rectify or assist in rectifying any product, credit, shipping or similar complaint arising from the purchase or use of its product; verify the destruction of damaged merchandise; coordinate the delivery of merchandise, whether or not special promotions are involved; distribute replacement parts; inspect the installation of its product by its customer or user of its product; or conduct credit investigations or arrange for credit and financing for its customer or user of its product;

"(8) delivering merchandise inventory on consignment to its distributors or dealers;

"(9) owning or leasing (as lessee) personal property which is not related to solicitation of orders; and

"(10) participating in the approval of servicing distributors and dealers where its customer or user of its product can have such product serviced or repaired."

on business" in New York because the taxpayer had no property or place of business, no payroll, and no sales in that state,[11] and furthermore, that the taxpayer did not conduct there any of the activities listed in § 12-214-1 (a). Even if we accept the commissioner's incorporation by reference of the terms of § 12-214-1 (a), we are not persuaded that the regulation supports his argument. Although the activities representative of the taxpayer's business are not explicitly recognized in the regulation, § 12-214-1 (a) unequivocally provides that the list "includ[es], but [is] not limited to" the activities identified therein. The taxpayer claims that it negotiated for and made purchases of candies and confectioneries from foreign vendors. These meetings and purchases are virtually identical to the conduct of its business in Connecticut, and lie at the heart of its corporate purpose. Furthermore, this type of purchasing activity is not explicitly excluded from "carrying on business," as, for instance, is the mere solicitation of orders for tangible personal property.

Viewing the statute at issue as a statute imposing a tax and therefore construing any ambiguity in favor of the taxpayer, we agree with the taxpayer that it was "conducting business" because it was "carrying on business" under either § 12-213 or § 12-214-1 (a). In *Northeastern Pharmaceutical & Chemical Co.* v. *Heffernan,* 179 Conn. 363, 367–70, 426 A.2d 769 (1979), we held that a corporation was required to apportion *losses* out of state because another state could have imposed a franchise tax on the corporation, and the corporation's "activity" was only accrued losses on the sale of machinery and equipment as it was winding up its

---

[11] The commissioner's emphasis on the taxpayer's lack of property, payroll, and sales in New York is explicitly relevant to the formulae contained in General Statutes § 12-218 that determine the taxpayer's apportionment percentage, which arguably may be zero. The determination of the apportionment percentage is not, however, an issue before this court.

operation in that state. It is as appropriate to recognize that the taxpayer here may apportion its *income* out of state, although this may entail a loss of revenue for the state, as it was to require the corporation in *Northeastern Pharmaceutical & Chemical Co.* v. *Heffernan,* supra, to apportion its losses out of state, thereby increasing this state's revenue. The commissioner must permit apportionment of income in the circumstances of this case.

### III

Anticipating the possibility that the judgment of the trial court might be reversed, and the taxpayer's appeal sustained, the parties have addressed the framing of a proper remand. Although the taxpayer urges us to direct the entry of a judgment for a refund in the amount to which it claims to be entitled, we agree with the commissioner that such an order would be inappropriate. The record reflects that there has been no administrative determination of the validity or accuracy of the amount of the taxpayer's claimed refund. The parties stipulated to many of the relevant facts, but they did not stipulate to the amount of any refund. Further, the commissioner in his pleadings in the trial court denied the taxpayer's allegation that an uncontested refund amount was due. The plenary review that the statutes authorize for tax appeals; *Kimberly-Clark Corporation* v. *Dubno,* 204 Conn. 137, 144–45, 527 A.2d 679 (1987); presupposes an underlying administrative determination of fact. A remand to the commissioner is the appropriate course in the absence of such an administrative determination.

The judgment is reversed and the case is remanded to the trial court with direction to remand the case to the commissioner for further proceedings in accordance with this opinion.

In this opinion the other justices concurred.