[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This case involves the construction of a few words in Connecticut's sales tax statute as it existed between 1976 and 1989. Although the taxes in dispute exceed one million dollars, the relevant facts can be concisely stated. CT Page 10270
The plaintiff, National Cleaning Contractors, Inc. ("National") cleans office buildings. During the taxable years in question, it had contracts with three insurance companies — Phoenix Mutual Life Insurance Co., The Travelers Insurance Co., and The Hartford Insurance Group — to service their respective premises. Its services included the full range of commercial cleaning services — such as the cleaning of floors, walls, and carpets; the removal of waste paper and waste materials; the dusting and wiping of office furniture and equipment; and the cleaning of lavatories, elevators, and lobbies. (The contracts set forth lengthy lists of items to be cleaned, but it is unnecessary to repeat these lists for purposes of this opinion.)
In 1976, as will be discussed below, Connecticut's sales tax statute was amended so as to make it applicable only to services to "real" property. When it became apparent that this change was going to be made, National's clients conducted surveys to determine what percentage of its services to their respective businesses were to "real" property — such as floors, walls and fixtures — and what percentage was attributable to "personal" property — such as desks and wastebaskets. Following the effective date of the amendment, National paid sales tax only on the services its clients attributed to "real" property. The motivating force behind this change was not National but its clients. National passed the sales tax on to its clients in its bills, and the clients obviously benefited from lower bills. At the time of this change, the clients agreed to reimburse National for any additional tax found to be owing.
The State audited National in 1989 for the period January 1, 1986, to May 31, 1989. For some reason, this was the first audit covering any year after the 1976 amendment. The auditor disagreed with National's entire approach of attributing some of its services to "real" and some to "personal" property and essentially, found all of National's services to be taxable. Because of the auditor's analysis, the accuracy of the percentage breakdown by National's clients between services to real and personal property was not reviewed. No administrative findings concerning the accuracy of this approach were made. National filed a timely appeal to this court. After the appeal had been filed, but prior to the hearing, National reviewed its records to make its own determination of the percentage breakdown between services to real and personal property. (The original surveys, it will be recalled, had been conducted by National's clients.) Using the data available CT Page 10271 to it, National determined that the services it had rendered to "real" property were actually less than it had estimated and that, assuming that its general approach was a valid one, it had actually paid more taxes than it owed.
Two different issues are presented on this appeal. The first is whether National was indeed correct in assuming that at least some of its services were nontaxable services to personal property. If National prevails on this first issue — as I determine below that it must — the second issue that arises is whether I should, as part of my plenary review, make my own assessment of the validity of the percentage breakdowns used by National and its clients or, alternatively, whether a remand to the Commissioner is the appropriate course.
In order to fully understand the first issue, it is helpful to review the textual history of the pertinent part of the sales tax statute. In Connecticut, as in most states, the sales tax is imposed only on specified services. See 2 Jerome R. Hellerstein Walter Hellerstein, State Taxation para. 12.05 (1992). In 1975, when the Connecticut legislature first imposed a sales tax on services, it defined as a "sale" "services to industrial, commercial or income-producing property, including but not limited to such services as management, maintenance, janitorial, electrical, plumbing, painting, carpentry, landscaping and exterminating." 1975 Conn. Acts 75-213 15.
The Commissioner's response to the 1975 Act is of same interest. In August 1975, in the Tax Department Bulletin, the following question and answer were published:
 Q. We service banking equipment such as drive-up windows, safes, vault doors, safe deposit boxes, filing equipment etc. Will our labor costs and expenses for services rendered be taxable as of July 1, 1975?
 A. The services rendered by you to a bank building constitutes a taxable service. The servicing of drive-up windows, safes, vault doors, safe deposit boxes etc., constitutes a service to real estate and is therefore taxable. The services rendered by your company on tangible personal property will not be subject to the tax.
Tax Department Bulletin, August 1975, Conn. Tax Rep. (CCH) para. 60-056.76 at 6084. Later, on December 8, 1975, the CT Page 10272 Legislative Regulations Review Committee approved a regulation stating that "The list of services subject to the tax includes but is not limited to . . . 2. Maintenance[;] 3. Janitorial . . . 18. Refuse Disposal." Conn. Agencies Regs. 12-426-26 (b) (1975).
In 1976, the legislature, in a decision of consummate importance for purposes of this case, amended the 1975 act by inserting the word "real" between "income-producing" and "property." 1976 Conn. Acts 76-114 2. The legislation was codified as amended at Conn. Gen. Stat. 12-407 (2)(i)(I) (1977). The statute as amended taxed "services to industrial, commercial or income-producing real property, including but not limited to, such services as management, maintenance, janitorial, electrical, plumbing, painting, carpentry, landscaping and exterminating." This was the form of the statute during the years in question in this case.
The statute, thus amended, remained intact for thirteen years, until it was once again amended in 1989, this time more extensively. The 1989 legislature omitted "maintenance," "janitorial," "landscaping," and "exterminating" services from the laundry list of services to "real property" that had been taxable and made all services of this description taxable as sales, whether or not they are services to real property. For good measure, it made "any repair or maintenance services to any item of tangible personal property, exclusive of [certain] motor vehicles" taxable as well. 1989 Conn. Acts. 89-251 1 (codified as amended at Conn. Gen. Stat. 12-407 (2)(i) (1993)). The statute, after the 1989 amendment, classified as a "sale"
 (1) Services to industrial, commercial or income-producing real property, including but not limited to, such services as management, electrical, plumbing, painting and carpentry . . . (X) landscaping and horticulture services . . . (Z) maintenance services, (AA) janitorial services, (BB) exterminating services . . . and (DD) any repair or maintenance service to any item of tangible personal property, exclusive of [certain] motor vehicles.
The question in this case, as already mentioned, is the proper construction and application of the statutory text as that text existed between 1976 and 1989. The commissioner contends that that text renders taxable all of the services performed by National — cleaning floors and emptying wastebaskets alike. His argument is as follows. All of these services are "janitorial" in nature. CT Page 10273 "[J]anitorial Services are by their very nature services to real property." Post-trial Brief of the Commissioner at 6. Therefore all "janitorial" services are taxable. While this argument has the superficial attraction of being couched in a syllogism, it cannot survive close analysis.
The problem with the second premise of the Commissioner's syllogism -" janitorial services are by their very nature services to real property" — is that it is grounded in metaphysics rather than in the statutory text or the law of property. The services performed by National are admittedly janitorial "A janitor is . . . a person employed to take charge of rooms or buildings, to see that they are kept clean and in order, to lock and unlock them, and generally to care for them." Fagan v. Mayor, 84 N.Y. 348, 352
(1881). But this definition, however accurate, addresses only one of the requirements of the statute. Under the statutory text, no service — "janitorial" or otherwise — is taxable unless it is a service to "real property." "Property is divided into two great divisions, things personal and things real." Capen v. Peckham, 35 Conn. 88,93 (1868). As any first year law student learns, floors, walls and fixtures are real property, while things like wastebaskets and desks are personal property. A janitor who empties a wastebasket, for example, is servicing personal property rather than real property in spite of all of the Commissioner's arguments to the contrary.
The application of this principle to the present case has been complicated by the fact that the taxpayer here, National, performs both types of service and charges a single fee. The principle, however, remains clear. This can be illustrated by a simple hypothetical. Suppose that instead of hiring National, the insurance companies here had hired two companies, the Real Cleaning Company and the Personal Cleaning Company. Suppose further that Real cleaned only floors, walls, and fixtures, and that Personal cleaned everything else. Under those circumstances, it would be clear that Real's services would be taxable and Personal's would not.
This analysis is reinforced by the history of the statutory text. Under the text of the 1975 Act, it was at least arguable that all of National's services were taxable, assuming for purposes of argument that the personal property it serviced could be deemed "industrial, commercial or income-producing." (The Commissioner's position in the August 1975 Tax Department Bulletin can be explained only by an assumption that the personal property CT Page 10274 in question, could not be so denominated.) But by adding the adjective "real" to "property" in 1976, the legislature obviously intended to make a change. As a result of the 1976 amendment, not all "janitorial" services were now taxable — only those to "real property." To the extent that this term is ambiguous — although I do not believe that it is — it must be narrowly construed against the Commissioner since it occurs in the context of a tax imposition statute.
The 1989 amendment again affirms this analysis, for now all "maintenance" and "janitorial" services became taxable, whether or not they were services to real property. If all "janitorial" services, for example, were already taxable — as the Commissioner argues that they were — there would have been no need to make this change. The passage of this amendment indicates a legislative intent both to change from a system that only taxed some "janitorial" services to a system that taxed all of them and not to implement that change for services rendered before July 1, 1989. See Delevieleuse v. Manson, 184 Conn. 434, 442 n. 4,439 A.2d 1055 (1981); New Haven Commission on Equal Opportunities ex rel. Washington v. State University, 183 Conn. 495, 502,439 A.2d 404 (1981).
For these reasons, I find National's analysis of the statute to be persuasive, and its appeal must accordingly be sustained. The problem remains, however, as to what the proper rescript should be. National urges me to direct the entry of a judgment for a refund in the amount to which it claims to be entitled. The Commissioner, on the other hand, contends that I should remand the case to him for further proceedings in accordance with this opinion. On this issue, I believe that the Commissioner is correct.
The Commissioner relies upon Altray Co. v. Groppo,224 Conn. 426, 619 A.2d 443 (1993). The primary question in Altray was whether the taxpayer in that case was entitled to apportion its taxable income between Connecticut and New York. The Commissioner denied the right to apportion, claiming that all of the taxpayer's business had been conducted in Connecticut. The Commissioner did not address the amount of the refund due in the event that the taxpayer's legal position was correct. On appeal, the taxpayer prevailed on the merits and the question of the rescript consequently arose. The taxpayer argued (just as National has understandably argued here) that the Commissioner's request for a remand ought in fairness to be rejected because the Commissioner already had two bites at the apple. The Commissioner CT Page 10275 could have examined the legitimacy of the claimed refund in his audit and, further, had a second opportunity in the discovery phase of the appeal de novo in the Superior Court. Brief of Altray Co. at 25, Conn. Supreme Court Records Briefs (microfiche October 1992). This Supreme Court, however, was unpersuaded. "The plenary review that the statutes authorize for tax appeals," it wrote, "presupposes an underlying administrative determination of fact. A remand to the Commissioner is the appropriate course in the absence of such an administrative determination."224 Conn. at 440.
National attempts to distinguish Altray by arguing that that case "involved not only the mathematical computations required under Conn. Gen. Stat. 12-218, but also may have involved a determination by the Commissioner of the propriety of that method under Conn. Gen. Stat. 12-221a, which allows the Commissioner to exercise discretionary authority in determining whether an apportionment is "equitable." Memorandum in Opposition to Defendant's Motion to Strike at 6. National further points to United Illuminating Co. v. Groppo, 220 Conn. 749,601 A.2d 1005 (1992), which issued a remand to the trial court for "a factual determination" as to whether certain equipment was real or personal property. Id. at 753 n. 4, 765. National has, finally, done prodigious research concerning the practice in other jurisdictions which, it argues, supports a determination of the refund by the trial court under these circumstances.
Although National's policy arguments are not without persuasive power, I simply cannot read Altray as narrowly as it does. Altray does not confine its reasoning to statutes involving the Commissioner's equitable discretion. Indeed, this argument is not even mentioned by the Court. Rather, Altray plainly states that plenary review in a tax appeal "presupposes an underlying administrative determination of fact." To the extent that United Illuminating is inconsistent with Altray, Altray must control since it is the more recent pronouncement.
These general considerations aside, I add that a remand to the Commissioner makes much more sense here than a remand would have made in United Illuminating. The question of whether certain items of United Illuminating's equipment were attached to the realty, see 220 Conn. at 753 n. 4, was a fairly discrete mixed question of fact and law that could be reasonably well performed by the trial court in the first instance. In contrast, the question of what percentage of National's cleaning services CT Page 10276 over a period of several years was attributable to real property and what percentage was attributable to personal property is a vast and complex question of fact that is much more sensibly conducted in the first instance in the form of an audit. I appreciate National's argument that the Commissioner has already had an opportunity to do this, but that argument was unsuccessful in Altray and it must, consequently, be unavailing here.
For the reasons stated above, the appeal is sustained, and the case is remanded to the Commissioner for further proceedings in accordance with this opinion.