BLUE, J.
 

 Barbara A. Hubbard (Hubbard) died a wealthy and generous woman. She left almost two million dollars in specific bequests to relatives and friends. The residue of her estate, worth well over four million dollars, went to a marital trust established for the benefit of her husband, Elijah K. Hubbard. Before the marital trust could be funded, however, this latter amount was reduced by over one million dollars in federal estate taxes. This reduction of the residue was necessary because, under her will, the specific bequests were to be paid tax free. State succession taxes were also paid as a result of the specific bequests. The question presented in this tax appeal is how the state succession tax should be applied to the one million dollars paid to the federal government.
 

 The facts in this case have been fully stipulated. Hubbard, a resident of West Hartford, died on June 7, 1992. She was survived by her husband. Hubbard’s will, executed in 1986, left several specific bequests and poured the remainder of her property into an inter vivos trust that Hubbard established in 1977 and later amended a number of times. The most important amendment to the trust is the sixth amendment, executed in 1982. This amendment must be described in some detail.
 

 The sixth amendment provides that, following Hubbard’s death, “[t]he Trustees shall . . . pay from the principal of the trust such part or all, as my Executor shall direct, of (i) any debts which are enforceable against my estate, (ii) my funeral expenses, (iii) the expenses of administering my estate, including the expenses of any ancillary probate proceedings, and (iv)
 
 *425
 
 any legacy, succession, inheritance, transfer or estate taxes levied or assessed upon or with respect to any property which is included as part of my estate for the purpose of any such tax, whether such property passes under my will or in any other manner. ... No portion of any such payments shall be derived from or charged against the amount of the dollar distributions provided for in Section 3.3.” Section 3.3, to which the language just quoted refers, directs anumber of specific bequests, or “dollar distributions,” to various individuals. The remaining trust property is then to be held in a separate marital trust for the benefit of her husband. The income of the marital trust is to be paid to him. In addition, he is given complete power to invade the principal of the trust and is empowered to dispose of any remaining principal by will upon his death.
 

 Hubbard left a gross taxable estate of $6,865,739.55. Her specific bequests amounted to $1,935,000. Of this amount, $5000 was a charitable bequest; the rest went to relatives and friends.
 
 [1]
 
 A state succession tax of $370,000 was paid as a result of these bequests. After payment of the bequests, the state succession tax, her funeral and administrative expenses and debts, and the transfer of some jointly held property directly to her husband, $4,447,425.58 remained available to fund the marital trust. The federal estate tax that had to be paid before the marital trust could actually be funded, however, amounted to $1,125,481.05. This tax was duly paid, and the amount of the marital trust was correspondingly reduced.
 

 The estate’s Connecticut succession tax return was executed on March 5, 1993. As mentioned, $370,000 in
 
 *426
 
 succession taxes had already been paid. The return calculated the actual amount due to be $360,363.86. A refund of $9636.14 was consequently requested.
 

 On August 19, 1994, the commissioner of revenue services (commissioner) executed a succession tax assessment disagreeing with the succession tax return. The commissioner’s disagreement was not mathematical but philosophical. Briefly stated, the commissioner reasoned that the succession tax should be calculated not only with respect to the specific bequests mentioned above but also with respect to the federal estate tax. Based on this assumption, the commissioner calculated that the actual tax due was $640,640.45. After giving credit to the $370,000 already paid, the commissioner demanded a balance assertedly due of $270,640.45.
 

 Pursuant to General Statutes § 12-367 the estate objected to the commissioner’s assessment. A hearing was held in the Probate Court for West Hartford
 
 (Berman,
 
 J.). On May 1, 1995, Judge Berman, in an exceptionally thoughtful and well reasoned opinion, sustained the estate’s objection and ordered the commissioner to recompute the tax accordingly. The commissioner filed a timely appeal to this court.
 

 As mentioned, the issue presented in this appeal is how the state succession tax should be applied to the $1,125,481.05 paid to the federal government to satisfy the federal estate tax. It should be explained at the outset that, for succession tax purposes, the amount of the federal estate tax is not an allowable deduction from the gross taxable estate. General Statutes § 12-351 (a);
 
 Watrous
 
 v.
 
 Connelly,
 
 141 Conn. 257, 105 A.2d 654 (1954). The question, rather, is the rate of taxation that should apply to this amount. The succession tax is not imposed at a uniform rate. Different rates are imposed depending on the relationship of the decedent to the beneficiary.
 
 Lavieri
 
 v.
 
 Commissioner of Revenue
 
 
 *427
 

 Services,
 
 184 Conn. 380, 382, 439 A.2d 1012 (1981). The central statute in this scheme is the “rates” statute, General Statutes § 12-344.
 

 The rates statute establishes four classes of beneficiaries, denominated class AA, class A, class B, and class C. Class AA enjoys the most favorable rate; class C the least. The statute is extremely lengthy, but it need not be quoted in full because it is common ground that the amount in question here (the amount paid to the federal government) must be taxed at either the class AA or the class C rate.
 

 The relevant portion of the statute is as follows: “Rates, (a) The tax imposed under the provisions of this chapter shall be at the following rates: Class AA, subject to the provisions of subsection (b) of this section with respect to the net taxable estate passing to the surviving spouse of any transferor whose death occurs on or after July 1, 1986, the net taxable estate of any transferor passing to any husband or wife, in excess of three hundred thousand dollars in value to and including four hundred thousand dollars, five per cent thereof; on the amount in excess of four hundred thousand dollars to and including six hundred thousand dollars, six per cent thereof; on the amount in excess of six hundred thousand dollars to and including one million dollars, seven per cent thereof; and on the amount in excess of one million dollars, eight per cent thereof . . . Class C, the net taxable estate of any transferor passing to any person, corporation or association, not included in either Class AA, Class A or Class B, in excess of one thousand dollars, and not otherwise exempt, shall be subject to a tax of eight per cent to and including twenty-five thousand dollars; the tax on the amount passing to beneficiaries in this class, in excess of twenty-five thousand dollars to and including one hundred fifty thousand dollars, shall be nine per cent thereof; on the amount in excess of one hundred
 
 *428
 
 fifty thousand dollars to and including two hundred fifty thousand dollars, ten percent thereof; on the amount in excess of two hundred fifty thousand dollars to and including four hundred thousand dollars, eleven per cent thereof; on the amount in excess of four hundred thousand dollars to and including six hundred thousand dollars, twelve per cent thereof; on the amount in excess of six hundred thousand dollars to and including one million dollars, thirteen per cent thereof; and on the amount in excess of one million dollars, fourteen per cent thereof. . . . (b) The tax under this section applicable to the net taxable estate of any transferor passing to the surviving spouse of such transferor shall, with respect to the estate of any transferor whose death occurs on or after July 1, 1986, be imposed as follows ... (3) if the death of the transferor occurs on or after July 1, 1988, the net taxable estate passing to the surviving spouse of such transferor shall not be subject to tax under this chapter.” General Statutes § 12-344.
 

 Given the fact that Hubbard’s death occurred after July 1, 1988, the class AA rate is zero for purposes of this case. General Statutes § 12-344 (b) (3). The class C rate, in contrast, is substantial. Judge Berman held that the amount in question here was to be taxed at the class AA rate. The commissioner claims that it is the class C rate that is appropriate.
 

 The commissioner explained at argument that he does
 
 not
 
 claim that the federal government is itself a class C beneficiary. This concession is appropriate because the federal government is not a beneficiary at all. (If the decedent had, in the fashion of Justice Oliver Wendell Holmes, actually bequeathed her property to the United States, the bequest would be tax exempt. General Statutes § 12-347 [a]). The commissioner argues, rather, that the class C rate is appropriate because the federal estate tax in question was made necessary by Hubbard’s specific bequests. All of those
 
 *429
 
 bequests (with the exception of one tax exempt charitable bequest) went to beneficiaries who were themselves class C recipients. Thus, the commissioner reasons, the amount of the federal estate tax generated by those bequests should be taxed at the class C rate.
 

 Although the commissioner’s position makes some sense when stated as a general proposition, it encounters formidable problems when considered in light of the actual statutory text. These textual problems, combined with controlling maxims of statutory construction, make it clear that Judge Berman’s decision is correct.
 

 In the first place, as the commissioner candidly conceded at argument, the asserted claim requires diametrically opposite constructions of parallel language in the same statute. In order to succeed in his argument, the commissioner must successfully bring the amount in question — t he amount paid to the federal government— within the class C language of § 12-344 (a). He must show that this amount is “the net taxable estate of any transferor passing to any person, coiporation or association, not included in either Class AA, Class A or Class B . . . .” General Statutes § 12-344 (a). Once it is conceded that the federal government is not itself a class C beneficiary, this approach requires a very liberal construction of the controlling statutory language. Essentially, the commissioner must argue that the amount in question — the tax money — has “passed” to the class C recipients even though they never received that money or had any right to receive it. This is, at the very least, a textually debatable argument. But insofar as it can be made at all, it equally applies to the class AA language of the same statutory subsection.
 

 Section 12-344 (a) provides that the class AA rate applies to “the net taxable estate of any transferor passing to any husband or wife . . . .” Why it cannot be
 
 *430
 
 said that the federal tax “passed” to the husband here in the same fashion that it assertedly “passed” to the class C beneficiaries? Of course, as the commissioner points out, the husband never actually received the amount in question, but if lack of actual receipt were the touchstone, the amount could not be taxed at the class C rate either. The real question is from which share the tax money came. As Judge Berman pointedly explained, “those taxes had to come from somewhere, and the somewhere clearly expressed in the decedent’s will and trust was not from the trust’s Section 3.3 dollar distributions, but from the decedent’s marital trust.” In reality, the money paid to the federal government came not from the share of the class C beneficiaries but from the share of the surviving spouse. If the federal estate tax had been unexpectedly repealed at the moment of Hubbard’s death, her husband would have been entitled to the amount in question. The class C recipients had no right to it whatsoever.
 

 The problem before the court boils down to this. The property in question must logically have “passed” to one of three possible recipients: the federal government, the husband, or the class C beneficiaries. The parties agree that the federal government must be eliminated from consideration. Even though the property was in fact paid directly to the federal government, the government, as mentioned, cannot be described as a beneficiary. This leaves the second and third possibilities. Between them, the second possibility is by far the more realistic. The husband had a right to the money. The class C recipients did not.
 

 To avoid the consequences of this reasoning, the commissioner concedes that it is necessary to narrowly construe with respect to class AA recipients the very “passing” language that he has just argued should be broadly construed with respect to class C recipients. The commissioner’s justification for this inconsistent
 
 *431
 
 construction is that the class AA language is the language of a tax exemption and, therefore, must be construed in favor of the state. See
 
 Altray Co.
 
 v.
 
 Groppo,
 
 224 Conn. 426, 432, 619 A.2d 443 (1993). In support of this position, he points to a provision of the deductions statute, General Statutes § 12-350 (k), which refers to “any amount exempted pursuant to subsection (b) of section 12-344.” It does not follow from this reference, however, that § 12-344 is a tax exemption statute for purposes of the maxims of statutory construction. It is not, strictly speaking, analogous to the actual tax exemption statute, § 12-347. It is, rather, a tax imposition statute that sets forth a number of different rates of taxation. One of those rates, applicable to surviving spouses of transferors dying on or after July 1, 1988 is zero. General Statutes § 12-344 (b) (3). This latter provision actually states a rule of
 
 nontaxability.
 
 Section 12-344 (b) (3) provides that “if the death of the transferor occurs on or after July 1,1988, the net taxable estate passing to the surviving spouse of such transferor shall not be subject to tax under this chapter.” The Supreme Court has repeatedly ruled that statutes stating rules of nontaxability are not governed by the maxim that tax exemption statutes are to be construed strictly against the taxpayer. See
 
 Loomis Institute
 
 v.
 
 Windsor,
 
 234 Conn. 169,176, 661 A.2d 1001 (1995), and authorities cited therein.
 

 The correct approach to construction of § 12-344 is articulated in
 
 Tax Commissioner
 
 v.
 
 Estate of Bissell,
 
 173 Conn. 232, 377 A.2d 305 (1977). “A succession tax statute must be construed as a whole; its various provisions are in parti materia and must be construed together so as to carry out the intent of the legislature.” Id., 245-46. Under this approach, it is inappropriate to construe the parallel class AA and class C provisions of § 12-344 (a) in diametrically opposite ways. Given this fact, the commissioner’s argument necessarily fails.
 

 
 *432
 
 Another applicable maxim of statutory construction leads to the same result. “[A]ny ambiguity in a tax imposition statute ... is to be construed in favor of the taxpayer.”
 
 Prudential Property & Casualty Ins. Co.
 
 v.
 
 Bannon,
 
 233 Conn. 243, 248, 658 A.2d 567 (1995). The commissioner here is seeking to impose affirmatively the class C tax rate of § 12-344 (a) in lieu of the rule of nontaxability of § 12-344 (b) (3). In order to do so, he must establish that the amount in question (the amount paid to the federal government) actually “passed” to the class C recipients. This is, as already mentioned, an extremely difficult argument to make. As Justice Holmes once remarked, “taxation is not so much concerned with the refinements of title as it is with actual command over the property taxed . . . .”
 
 Corliss
 
 v.
 
 Bowers,
 
 281 U.S. 376, 378, 50 S. Ct. 336, 74 L. Ed. 916 (1930). The property sought to be taxed here is the amount of the federal estate tax. The class C recipients had no “actual command over the property taxed.” To succeed here, the commissioner’s argument must employ an exceptionally elastic view of the tax imposition language in question. This cannot be done under controlling law. The tax imposition language in question must, if anything, be narrowly construed in favor of the taxpayer.
 

 For the reasons stated above, I agree with Judge Berman that the amount of the federal estate tax cannot be taxed at the class C rate given the facts of this case. Judge Berman’s finding that “the property passing to the Class AA marital trust included those sums for Connecticut succession tax purposes,” is correct.
 

 Judgment shall enter for the defendant.
 

 [1]
 

 The parties have stipulated that the specific bequests amounted to $1,935,000. The federal estate tax return attached to the stipulation, however, lists specific bequests totalling $1,973,805. The reason for this discrepancy has not been disclosed. Neither party has claimed the specific bequests have been miscalculated.